**Slip Op. 14-132**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

```
_____
MARK DAVID, A DIVISION OF         :
BAKER, KNAPP & TUBBS, INC.,       :
                                  :
        Plaintiff,                :  Before: Nicholas Tsoucalas,
                                  :          Senior Judge
    and                           :
                                  :  Consol. Court No.: 13-00233
BRYAN ASHLEY INTERNATIONAL,       :
METROPOLIS MANUFACTURING, INC.    :
(DBA VAUGHAN BENZ), AND           :
MGM RESORTS INTERNATIONAL         :
DESIGN,                           :
                                  :
        Consolidated              :
        Plaintiffs,               :
                                  :
    v.                            :
                                  :
UNITED STATES,                    :
                                  :
        Defendant,                :
                                  :
    and                           :
                                  :
AMERICAN FURNITURE MANUFACTURERS  :
COMMITTEE FOR LEGAL TRADE and     :
VAUGHAN-BASSETT FURNITURE CO.,    :
INC.,                             :
                                  :
        Defendant-Intervenors.    :
_____
```

**OPINION**

[Plaintiff's motion for judgment on the agency record is denied]

Dated: November 18, 2014

<u>Alexander H. Schaefer</u> and <u>Hea J. Koh</u>, Crowell & Moring LLP, of Washington, DC, for Mark David, a division of Baker, Knapp & Tubbs, Inc., plaintiff.

Peter Koenig, Squire Patton Boggs LLP, of Washington, DC, for Bryan Ashley International, Metropolis Manufacturing, Inc., and MGM Resorts International Design, consolidated plaintiffs.

Stuart F. Delery, Assistant Attorney General, Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, and Douglas G. Edelschick, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. Of counsel on the brief was Shana A. Hofstetter, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Joseph W. Dorn, J. Michael Taylor and P. Lee Smith, King & Spalding LLP, of Washington, DC, for American Furniture Manufacturers Committee for Legal Trade and Vaughan-Bassett Furniture Company, Inc., defendant-intervenors.

**TSOUCALAS, Senior Judge:** Plaintiff, Mark David, a division of Baker, Knapp, and Tubbs, Inc. ("Mark David" or "Plaintiff"), moves for judgment on the agency record contesting defendant United States Department of Commerce's ("Commerce") determination in Wooden Bedroom Furniture From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2011, 78 Fed. Reg. 35,249 (June 12, 2013). Consolidated Plaintiffs, Bryan Ashley International, Metropolis Manufacturing, Inc., and MGM Resorts International Design, join and supplement Plaintiff's motion. See Pls. Adoption of Pl. Br. at 1-3. Commerce and defendant-intervenors, American Furniture Manufacturers Committee for Legal Trade and Vaughan-Bassett Furniture Company, Inc., oppose Plaintiff's motion. Def.'s Resp. to Pl.'s and Consolidated Pls.' Rule 56.2 Mot. for J. on the Agency R. at 1-2. The AFMC's Resp. in Opp'n to Mark David's Rule 56.2

Mot. for J. on the Agency R. at 1.  For the following reasons, Plaintiff's motion is denied.

### Background

In January 2005, Commerce issued an antidumping duty order covering wooden bedroom furniture ("WBF") from the People's Republic of China ("PRC").  <u>Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: WBF From the PRC</u>, 70 Fed. Reg. 329, 330 (Jan. 4, 2005).  Commerce acknowledged Shanghai Maoji Imp And Exp Co., Ltd. ("Maoji") as qualifying for a separate rate status and assigned a dumping margin of 6.68%.  <u>WBF From the PRC: Corrected Notice of Court Decision Not in Harmony With the Final Determination of Sales at Less Than Fair Value and Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order Pursuant to Court Decision</u>, 76 Fed. Reg. 53,409, 53,411–53,412 (Aug. 26, 2011).

Commerce initiated the seventh administrative review during the period of review beginning on January 1, 2011 through December 31, 2011.  <u>WBF From the PRC: Initiation of Administrative Review</u>, 77 Fed. Reg. 12,235, 12,237 (Feb. 29, 2012).  During the seventh administrative review, Commerce named Maoji as a mandatory respondent.  <u>WBF From the PRC: Preliminary Results of Antidumping Duty Administrative Review; 2011</u>, 78 Fed. Reg. 8493, 8494 (Feb. 6, 2013) ("<u>Preliminary Results</u>").  Maoji responded to Commerce's antidumping questionnaire and supplemental questionnaires between

July and October 2012. <u>Decision Memorandum for Preliminary Results of Antidumping Duty Administrative Review: WBF from the PRC</u>, at 3 (February 1, 2013) ("Preliminary Decision Memorandum"). During the review Maoji notified Commerce that it was not practicable for it to provide a response to the Section D questionnaire or the supplemental Section A questionnaire. <u>See</u> Letter from Maoji to Commerce re: WBF from PRC (Aug. 3, 2012), Pub. Rec. 325, Attach. 1 at 1.[1]

Commerce issued its preliminary results on February 6, 2013. <u>Preliminary Results</u>, 78 Fed. Reg. at 8493. Commerce preliminarily determined that Maoji failed to answer all sections of Commerce's questionnaire, and thus failed to establish its eligibility for a separate rate status. <u>Id.</u> at 8494. As a result, Commerce treated Maoji as part of the PRC-wide entity. <u>Id.</u> at 8494.

Commerce also preliminarily determined that the PRC-wide entity, including Maoji, did not cooperate to the best of its ability during the review. <u>Id.</u> at 8494. Therefore, Commerce relied on adverse facts available ("AFA") to determine the dumping margin for the PRC-wide entity. <u>Id.</u> at 8494. Commerce assigned an AFA rate of 216.01 percent to the PRC-wide entity, including Maoji, which was calculated based on a 2004-2005 New Shipper

---

[1] Hereinafter, documents in the public record will be designated "PR" without further specification except where relevant.

Review.  <u>WBF From The PRC: Final Results of the 2004-2005 Semi-Annual New Shipper Reviews</u>, 71 Fed. Reg. 70,739, 70,741 (December 6, 2006).  Commerce stated that the rate had been corroborated in previously completed administrative reviews in which it found that the 216.01% rate for the PRC-wide entity was within "the range of the calculated margins on the record of the [fifth] administrative review." <u>Preliminary Results</u> at 15.

On March 8, 2013, Plaintiff, Mark David USA ("Plaintiff"), an importer of WBF, filed case briefs with Commerce. <u>WBF from the PRC: Issues and Decision Memorandum for the Final Results of Review,</u> at 1 (June 5, 2013) ("<u>Decision Memorandum</u>"). Mark David contests whether the 216.01% margin, as assigned to Maoji as part of the PRC-wide entity was reasonable.

Commerce maintained its preliminary findings in its <u>Final Results</u>.  <u>WBF From the PRC: Final Results of Antidumping Duty Administrative Review; 2011</u>, 78 Fed. Reg. 35,249, 35,249 (June 12, 2013) ("<u>Final Results</u>").

### JURISDICTION and STANDARD OF REVIEW

This Court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2006) and Section 516A(a)(2)(B)(iii) of the Tariff Act of 1930 as amended, 19 U.S.C. §1516a(a)(2)(B)(iii)(2006).

This Court will uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C.

§1516a(b)(1)(B)(i). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951).

Additionally, "courts look for a reasoned analysis or explanation for an agency's decision as a way to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion." Wheatland Tube Co. v. United States, 161 F.3d 1365, 1369 (Fed. Cir. 1998). "An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represent an unreasonable judgment in weighing relevant factors." Welcom Prods., Inc. v. United States, 36 CIT ____, 865 F.Supp.2d 1340, 1344 (2012) (citing Star Fruits S.N.C. v. United States, 393 F.3d 1277, 1281 (Fed. Cir. 2005). "An agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently." SKF USA Inc. v. United States, 263 F.3d 1369, 1382 (Fed. Cir. 2001).

### DISCUSSION

Maoji does not dispute that they failed to participate fully in the review, and that they therefor can be subjected to an AFA rate. The issue before the court is instead whether Commerce's application of the 216.01% PRC-wide AFA rate to Maoji was reasonable. Plaintiff argues that the 216.01% PRC-wide AFA rate

was neither reliable nor relevant. See Pl.'s Mem. Supp. R. 56.2 J. Agency R. at 5-10 ("Pl.'s Mem."). According to Plaintiff, Commerce applied an "outdated" and "unsupported" margin that did not reflect Maoji's commercial reality. Id.

In antidumping duty proceedings involving merchandise from a non-market economy ("NME"), as is the case here, Commerce presumes that all respondents are government controlled and therefore subject to the country-wide rate. See Sigma Corp. v. United States, 117 F.3d 1401, 1405 (Fed. Cir. 1997). Commerce does allow respondents to rebut this presumption, however, by establishing the absence of both de jure and de facto government control. Id. Respondents who make this showing are eligible for a separate rate. Id. When a company fails to rebut the presumption of government control, Commerce employs that presumption and applies the country-wide rate to its merchandise. See id.

Plaintiff does not appear to dispute Commerce's finding that Maoji failed to rebut the presumption of government control in the Final Results. During the review Maoji notified Commerce that it was not practicable for it to provide a response to the Section D questionnaire or the supplemental Section A questionnaire. See PR 325 attach. 1 at 1. Commerce determined that Maoji was a part of the PRC-wide entity. See Shandong Mach. Imp. & Exp. Co. v. United States, 33 CIT 810, 815 (2009). Because Maoji failed to respond to Commerce's questionnaires regarding its

separate rate eligibility during the review, Commerce reasonably concluded that Maoji failed to demonstrate its absence of government control. See Sigma Corp., 117 F.3d at 1405.

The main issue for the court to evaluate is therefor whether Commerce's application of the 216.01% PRC-wide AFA rate to Maoji, which has not demonstrated its independence from the PRC-wide entity, was reasonable. A margin based upon AFA must be "a reasonably accurate estimate of the respondent's actual rate, albeit with some built-in increase intended as a deterrent to non-compliance." F.Lli de Cecco di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000). "[A]lthough a higher AFA rate creates a stronger deterrent, Commerce may not select unreasonably high rates having no relationship to the respondent's actual dumping margin." Gallant Ocean (Thai.) Co. v. United States, 602 F.3d 1319, 1323 (Fed. Cir. 2010) (citing de Cecco, 216 F.3d at 1032). "Commerce must select secondary information that has some grounding in commercial reality." Id. at 1324.

These standards grow out of 19 U.S.C. § 1677e(c), which provides that when Commerce relies on secondary information, it "shall, to the extent practicable, corroborate that information from independent sources that are reasonably at [its] disposal." 19 U.S.C. § 1677e(c). To corroborate secondary information, Commerce must find that it has "probative value." KYD, Inc. v.

United States, 607 F.3d 760, 765 (Fed. Cir. 2010). Secondary information has "probative value" if it is both reliable and relevant to the respondent. Mittal Steel Galati S.A. v. United States, 31 CIT 730, 734, 491 F. Supp. 2d 1273, 1278 (2007).

Plaintiff relies heavily on Lifestyle Enter., Inc. v. United States to support its argument that the 216.01% rate was unreasonable. Lifestyle Enterprise, Inc. v. United States, 35 CIT ___, ___, 768 F. Supp. 2d 1286 (2011) ("Lifestyle I"), after remand, 36 CIT ___, 844 F.Supp.2d 1283 (2012) ("Lifestyle II"), after second remand, 36 CIT ___, 865 F.Supp.2d 1284 (2012) ("Lifestyle III"), after third remand, 37 CIT ___, 896 F.Supp.2d 1297 (2013) ("Lifestyle IV"). Pl's Mem. at 7–9. Specifically, Plaintiff contends that this Court previously discredited the application of the 216.01% PRC-wide AFA in Lifestyle I. The court disagrees. In Lifestyle I, importers challenged the third administrative review of WBF from the PRC. See Lifestyle I, 768 F. Supp. 2d at 1292. Orient, a mandatory respondent, was originally subject to an antidumping margin of 216.01%. See id. at 1297. However, in Lifestyle I, Orient was not assigned the PRC-wide rate because "Orient had affirmatively demonstrated an absence of de jure or de facto control." See id. at 1296–1297, 1298 n. 12 ("Commerce did not assign the PRC-wide rate per se, but rather selected the same rate based on separate considerations."). Furthermore, the Court found in Lifestyle I that Commerce failed

to address the "dramatic increase in Orient's rate from 7.68% to 216.01%." Id. at 1299. Because Orient qualified for separate rate status, the Court in Lifestyle I held that Commerce was required to either explain its determination or corroborate Orient's AFA rate so that it relates to Orient's commercial reality. Id. at 1298-1299. Contrary to Plaintiff's assertion, the Court in Lifestyle I did not hold that the PRC-wide rate is uncorroborated.

Following three subsequent remands where the Court instructed Commerce to calculate an AFA rate which has some grounding in Orient's commercial reality, the Court in Lifestyle IV sustained Commerce's findings in its Third Remand Results of WBF from the PRC, applying a rate of 83.55% to Orient's exports of WBF. Lifestyle IV, 896 F. Supp. 2d at 1301-1302. The Court determined that the rate was sufficiently corroborated and reflected Orient's commercial reality. Id.

Unlike Orient in Lifestyle I, here, Maoji failed to qualify for separate rate status. As a result it received the PRC-wide AFA rate. Because Maoji was part of the PRC-wide entity, Commerce was not required to calculate a separate AFA rate relevant to Maoji's commercial reality. See Peer Bearing, 32 CIT at 1313, 587 F. Supp. 2d at 1327 ("[T]here is no requirement that the PRC-wide entity rate based on AFA relate specifically to the individual company."). Commerce was only required to corroborate the rate to

the PRC-wide entity.  See id.  Therefore, Plaintiff's reliance on Lifestyle I is misplaced.  Lifestyle I does not call into question the PRC-wide rate as applied to the PRC-wide entity, rather it only discredits its application to Orient, which successfully established the absence of both de jure and de facto government control.  Id.

Plaintiff also argues that Commerce has previously applied significantly lower rates to cooperating respondents in nine other administrative reviews of WBF in support of its contention that the rate is unreliable.  Pl.'s Mem. at 8–9.  The court does not find that these rates support Plaintiff's argument.  The rates that Plaintiff relies on were assigned to cooperating separate rate respondents.  See id.  The rates were not assigned to respondents who were considered to be a part of the PRC-wide entity.  Plaintiff does not show how these rates conflict with a rate applied to a respondent who fails to qualify for separate rate status.  In the instant case, as discussed above, unlike the nine cooperating respondents, Maoji is an uncooperative respondent that was found to be a part of the PRC-wide entity.

Additionally, Plaintiff insists that the "continued use" of the 216.01% margin in the Final Results is "contrary to this Court's precedent and disregards information that decisively rejects the reliability or relevance of the PRC-wide entity rate." Pl.'s Mem. at 9. Plaintiff's argument is unpersuasive. This Court

has noted that, "[u]nlike other sources of information, there are no independently verifiable sources for calculated dumping margins, other than previous administrative determinations." Peer Bearing Co.-Changshan v. United States, 32 CIT 1307, 1314, 587 F. Supp. 2d 1319, 1328 (2008). Therefore, when calculating the AFA rate for the PRC-wide entity, "the reliability of the calculation stems from its basis in prior verified information in previous administrative reviews," and "[i]f Commerce chooses a calculated dumping margin from a prior segment of the proceeding, it is not necessary to question the reliability of the margin if it was calculated from verified sales and cost data." Id., 587 F. Supp. 2d at 1328. Here, Commerce calculated the rate based on the 2004-2005 New Shipper Review. Decision Memorandum at 9-10. During a 2009 administrative review of WBF, Commerce corroborated the 216.01% rate for the PRC-wide entity. Id. at 10. Commerce deemed this rate to be relevant to this administrative review. Id. at 10. As discussed, Plaintiff failed to provide evidence indicating that this rate was unreliable. Because the 216.01% rate has been corroborated for the PRC-wide entity, and the evidence Plaintiff provided lacked probative value, Commerce's determination was reasonable. See Peer Bearing, 32 CIT at 1314, 587 F. Supp. 2d at 1328.

Finally, Plaintiff argues that the PRC-wide rate is punitive. Pl.'s Mem. 10-11. The court disagrees. Plaintiff

Case 1:13-cv-00251-NT   Document 19   Filed 11/18/14   Page 13 of 13

**Court No. 13-00233**                                                                                      **Page 13**

insists that Commerce failed to support Maoji's rate increase from 6.68% in previous reviews to the present 216.01% rate applied here. As discussed above, Maoji had previously qualified for separate rate status, and subsequently lost it in this review, therefore Maoji's previous rate is irrelevant in the instant case. The court finds that the 216.01% rate is supported by substantial evidence, thus "an AFA dumping margin determined in accordance with the statutory requirements is not a punitive measure." <u>KYD, Inc. v. United States</u>, 607 F.3d 760, 768 (Fed. Cir. 2010).

## Conclusion

For all the foregoing reasons, the court sustains Commerce's <u>Final Results</u>. Plaintiff's motion for judgment on the agency record is denied.

/s/ Nicholas Tsoucalas
**Nicholas Tsoucalas
Senior Judge**

**Dated:** <u>November 18, 2014</u>
**New York, New York**